

MAR 14 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN R. PANICO,

Plaintiff,

vs.

THE UNIVERSITY OF CHICAGO

Defendant.

13 CV 1987
JUDGE NORDBERG
MAGISTRATE JUDGE MASON

**COMPLAINT**

Plaintiff, John R. Panico, *pro se,* based upon information and belief complains against Defendant, The University of Chicago as follows:

NATURE OF THE ACTION

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, to correct unlawful employment practices and to provide appropriate relief to the Plaintiff John R. Panico for his cause of action for Retaliation by Defendant, The University of Chicago ("University"), when the University refused to interview/hire the Plaintiff, because the Plaintiff during his previous employment with the University, had complained of unlawful employment practices and was adversely affected by such practices. Plaintiff also raises the state law claims of discrimination, negligent supervision, and retention and wrongful/constructive termination.

PARTIES

1. Plaintiff, John R. Panico ("Plaintiff") is a Caucasian male citizen of Italian-American ancestry who resides in the State of Indiana.

2. Upon information and belief, the University is a not-for-profit corporation organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

3. At all relevant times, the University has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 70(b), (g) and (h) of Title VII, 42 U.S.C. Sections 2000e (b), (g) and (h).

4. At all relevant times, the University employed more than 15 persons.

JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 42 U.S.C. §2000 *et seq.*as this matter involves a federal question based upon Title VII of the Civil Rights Act of 1964.

6. The Court has jurisdiction and venue over this matter pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

PROCEDURAL PREREQUISITES

7. On or about August 24, 2012 Plaintiff filed a charge of Retaliation with the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights (See Exhibit "A").

8. On or about December 22, 2012, Plaintiff received his Right-to-Sue letter dated December 18, 2012 (See Exhibit "B").

9. Fewer than ninety (90) days has elapsed since Plaintiff received his Right-to-Sue Letter.

10. Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## FACTUAL BACKGROUND

11. Plaintiff's employment with the University began on or about January 4, 2010 as the University's Director of Labor Relations.

12. Plaintiff's employment with the University terminated on or about January 20, 2011.

13. Sometime in or about September 2010, while conducting a labor relations training program for supervisors, Rosie Muldrew ("Supervisor Muldrew") referred to Plaintiff as a "Guido".[1]

14. Supervisor Muldrew is an African-American female and person of color.

15. Plaintiff found the remark to be highly offensive and an ethnic slur against Italian-Americans. Supervisor Muldrew made the remark in the context that Italians were associated with organized crime.

16. That same day, Plaintiff reported the incident to Employee Relations Director ("ER Director") Tamika Lynch ("Lynch").

17. Lynch is an African-American female and person of color.

18. Plaintiff had complained that the word "Guido' to an Italian-American was derogatory, and stated by example, just as inflammatory as the word 'Nigger' to an African-American' or 'Faggot' to a homosexual.

[1] Guido /ˈgwiːdoʊ/ is a slang term for a lower-class or working-class urban Italian-Americans. It was used as a demeaning term for Italian-Americans in general.

19. Plaintiff complained that using such a word in the work place was inappropriate; created a 'hostile work environment' and was clearly in violation of University policies and EEO laws prohibiting such conduct in the workplace.

20. ER Director Lynch took no immediate action on Plaintiff's complaint.

21. Several weeks later, ER Director Lynch approached the Plaintiff and commented that Supervisor Muldrew "didn't know what the word Guido meant."

22. Plaintiff retorted: "Muldrew knew how to use the word in a sentence."

23. Approximately one month later, sometime in October 2010, while plaintiff was attending a one-on-one staff meeting with his immediate supervisor, Associate Vice President Human Resources, Gwynne Dilday ("AVP Dilday"), during a passing discussion, AVP Dilday had referred to Caucasians as "those Crackers".[2]

24. AVP Dilday is an African-American female and person of color.

25. Plaintiff again complained to ER Director Lynch about the racially hostile work environment being instituted by African-American females, and particularly the lack of enforcement of University policy, as those responsible for policy enforcement were the very persons complained of.

26. With over a month having lapse since plaintiff's first complaining to ER Director Lynch, Lynch finally took action and arranged for Plaintiff to meet with Associate Provost Ingrid Gould ("Gould").

27. Gould is a Caucasian female.

28. Upon information and belief, Aneesah Ali ("Ali") is the University's Affirmative Action Officer who normally conducts said investigations.

29. ("Ali") is an African-American female and person of color.

[2] 'Cracker' 'white cracker' or 'cracka' is a derogatory expression for Caucasians.

30. The results of Gould's investigation were sent the Plaintiff on or about January 10, 2011(See Exhibit "A").

31. Plaintiff resigned his employment with the University approximately one week later.

**Director of Employee Relations Position**

32. Upon information and belief, in 2011Plaintiff had learned the labor relations director position he vacated had been opened for a number of months.

33. Upon information and belief, Plaintiff learned the University was experiencing difficulty in locating candidates with sufficient labor relations skills and experience.

34. Plaintiff emailed Executive Vice President Nim Chinnah ("EVP Chinnah") in 2011 expressing an interest in returning to employment with the University handling labor relations for the University, and possibly for the University of Chicago Medical Center ("Medical Center") as well.

35. Upon information and belief, at the time Plaintiff emailed EVP Chinnah, the Medical Center was recruiting for a Director of Labor Relations.

36. EVP Chinnah emailed Plaintiff rejecting the offer.

37. EVP Chinnah is a Pakistani-American and person of color.

38. In 2001, Plaintiff did apply to Medical Center for positions of Director of Labor Relations *and* Manager of Employee Relations.

39. Plaintiff received no response from the Medical Center for either position.

40. Sometime in April 2012, the University posted a vacancy for the ER Director position.

41. On or about May 6, 2012 Plaintiff applied for the ER Director position through the University's website.

42. Plaintiff is an Employee and Labor Relations professional with over twenty-five years of experience directing and/or managing labor relations, employee relations and human resources function.

43. Plaintiff has been licensed to practice law for over 20 years with his forte being employment and labor law, and alternative dispute resolution.

44. At the time of Plaintiff's resignation, the University did not tell the Plaintiff he would not be eligible for re-employment with the University in the future.

45. Upon information and belief, other employees have resigned from the University and later have been re-employed.

46. On or about August 22, 2012, after having no response whatsoever to his application, Plaintiff emailed Associate Vice President for Human Resources, Dana Bradley ("AVP Bradley"), inquiring about the status of his application for the ER Director's position.

47. AVP Bradley told Plaintiff he would not be considered for the position.

48. AVP Bradley is an African-American female and person of color.

49. AVP Bradley reports to AVP Dilday, who reports to EVP Chinnah.

50. Upon information and belief, Defendant University continued to interview and/or hired other candidate(s).

51. The Defendant has engaged in unlawful employment practices at their Chicago, Illinois location, in violation of Section 703(a)(1) of Title VII. The practices include the following non-exclusive list of particulars:

a. Negligent retention and supervision of Supervisor Muldrew;

b. Negligent retention and supervision of AVP Dilday;

c. Negligent retention and supervision of ER Director Lynch;

d. Negligent retention and supervision of AVP Bradley;

e. Negligent retention and supervision of EVP Chinnah;

e. Failing to properly investigate and stop discrimination in the work place;

f. Retaliation for reporting a racially hostile work environment;

g. Constructive/wrongful termination.

h. Failure to Interview/Hire.

51. The result of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee and/or candidate for employment, and in retaliation for reporting discrimination.

52. The unlawful employment practices complained of were intentional.

53. The unlawful employment practices complained of above were done with malice or with reckless indifference to the protected rights of the Plaintiff.

**COUNT I**

**RETALIATION**

54. Plaintiff re-alleges and incorporates in this Count I paragraphs 1-53.

55. During his employment with the University, plaintiff formally complained of a hostile work environment because of racially-hostile remarks made by Supervisor Muldrew and AVP Dilday which were directed at the Plaintiff.

56. Plaintiff also complained about the lack of responsiveness and/or investigation when plaintiff first brought his complaint to ER Director Lynch.

57. On or about January 20, 2011, plaintiff resigned his position with University.

58. At all material times, Plaintiff met and/or exceeded all of the University's job performance expectations when employed as Director of Labor Relations.

59. Plaintiff meets and/or exceeds all of the job requirements for the position of ER Director for the University.

60. University refused to consider, interview or re-hire the plaintiff.

61. Defendant's refusal to consider, interview or re-hire the Plaintiff was in retaliation for Plaintiff's complaining of a racially hostile work environment while previously employed with the University as Director of Labor Relations.

WHEREFORE, the Plaintiff demands that a jury trial be held and that following such trial, judgment be entered on Plaintiff's behalf against The University of Chicago granting the following relief:

A. Order that Plaintiff John Panico be awarded damages sufficient to compensate him for all lost wages and benefits; (i) Loss of income and benefits, (ii) Front Pay to age sixty-six, (iii) Back Pay (iv) Interest on Back Pay (v) Future Pecuniary Losses, (vi) Inconveniences, (vii) Loss of Enjoyment of Life, (viii) Damages for Past Pecuniary Loss (out-of-pocket loss), (ix) Future Pecuniary Loss, (x) Other Non-pecuniary Loss (e.g., injury to professional standing, injury to character/reputation, injury to credit and loss of health).

B. Plaintiff's costs of this action including reasonable attorney fees;

C. Such punitive damages as are determined by an impartial jury as are warranted to deter Defendant, The University of Chicago from future conduct of the type proven at trial;

D. Such further and additional relief the Court deems proper.

Respectfully submitted,

John R. Panico, Esq. *pro se*
PANICO LAW LLC
9465 Counselors Row, Suite 200
Indianapolis, IN 46240
(317) 759-7464